W. SCOTT SIMPSON (*Pro Hac Vice* forthcoming)
JONATHAN BELING (*Pro Hac Vice* forthcoming)
SIMPSON, MCMAHAN GLICK & BURFORD, PLLC
2700 Highway 280, Suite 203W
Birmingham, Alabama 24112
Telephone: (205) 876-1600
Email: wsimpson@smgblawyers.com
jbeling@smgblawyers.com

LEE E. BAINS, JR. (*Pro Hac Vice* forthcoming)
THOMAS W. THAGARD (*Pro Hac Vice* forthcoming)
JAMES C. LESTER (*Pro Hac Vice* forthcoming)
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North, Suite 2400
Birmingham, Alabama 35203
Telephone: (205) 254-1000
Email: lbains@maynardcooper.com
tthagard@maynardcooper.com
jlester@maynardcooper.com

LINDA B. OLIVER (SBN 166720)
loliver@maynardcooper.com
MAYNARD, COOPER & GALE, LLP
600 Montgomery Street, Suite 2600
San Francisco, California 94111
Telephone: (415) 646-4700

Attorneys for Defendants HOMETOWN AMERICA MANAGEMENT
CORP., HOMETOWN AMERICA MANAGEMENT L.P.,
HOMETOWN AMERICA MANAGEMENT LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAM FOLKS and ELEANOR MILLER, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>     vs.<br><br>HOMETOWN AMERICA MANAGEMENT CORPORATION, a Delaware corporation; HOMETOWN AMERICA MANAGEMENT L.P., a Delaware partnership; HOMETOWN AMERICA MANAGEMENT LLC, a Delaware limited liability company, dba THE ORCHARD MOBILEHOME COMMUNITY; DANI CRAWFORD; and DOES 1 through 20,<br><br>        Defendants. | CASE NO.<br><br>**NOTICE OF REMOVAL**<br><br>(Removed from the Superior Court for Sonoma County, California, Case No. SCV262471) |

1

To the Clerk of the United States District Court for the Northern District of California and to Plaintiffs Cam Folks and Eleanor Miller and their attorneys of record:

**PLEASE TAKE NOTICE** that Defendants Hometown America Management Corporation ("Hometown Corporation"), Hometown America Management, L.P. ("Hometown LP"), and Hometown America Management, LLC ("Hometown LLC") (collectively "Defendants"), hereby file this Notice of Removal on the grounds set forth below.

1.      The state court action is removable to this Court, and this Court has jurisdiction over this civil action, under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, as well as 28 U.S.C. § 1441 (a) and (b), and 28 U.S.C. § 1453, because this is a putative class action involving more than 100 putative class members, the aggregate amount in controversy, excluding interest and costs, exceeds $5,000,000, and there is minimal diversity. As a separate and independent basis for jurisdiction, this civil action is also removable under 28 U.S.C. § 1332(a) because the named plaintiffs are diverse from all properly named defendants and the amount in controversy as to one of the named plaintiff's claims exceeds $75,000.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 with regard to the putative class members.

## I.  PLEADINGS AND PROCESS

2.      On or about May 15, 2018, Plaintiffs Cam Folks and Eleanor Miller ("Plaintiffs") commenced this putative class action, filing their original Class Action Complaint in the Superior Court of the State of California, County of Sonoma, titled *Cam Folks and Eleanor Miller v. Hometown America Management Corporation, Hometown America Management, L.P., Hometown America Management, LLC, and Dani Crawford*, Case No. SCV 262471 (the "Action"). (*See generally* Class Action Complaint ("Complaint" or "Compl."), attached as Exhibit A to Linda B. Oliver Declaration ("Oliver Decl."), Exhibit 1 to this Notice of Removal).

3.      Plaintiffs' Complaint asserts causes of action against the Defendants for: (i) violation of the Mobilehome Residency Law, Cal. Civ. Code § 798, *et seq.* ("MRL"), (ii) violation of the Elder Abuse and Dependent Adult Civil Protection Act, Cal. Welf. & Inst. Code § 15610, *et seq.*, (iii)

violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), (iv) breach of contract, and (v) declaratory relief.

4.      Defendant Hometown Corporation was first served with Summons and Complaint on May 24, 2018.  Defendants Hometown LP and Hometown LLC were first served with Summons and Complaint on May 29, 2018.[1]

5.      Because Sonoma County, California is located within the Northern District of California, this Notice of Removal is properly filed in this Court pursuant to 28 U.S.C. §§ 84(a), 1441, and 1446.[2]

6.      Pursuant to 28 U.S.C. § 1446(a), the Defendants have filed all process, pleadings, and orders filed and served upon them in the state court proceeding.[3]

## II.      CITIZENSHIP OF THE PARTIES

### A.      Citizenship of Plaintiffs

7.      As alleged, Plaintiff Cam Folks is, and was at the time the Complaint was filed, domiciled in and a citizen of the State of California.[4]

8.      As alleged, Plaintiff Eleanor Miller is, and was at the time the Complaint was filed, domiciled in and a citizen of the State of California.[5]

### B.      Citizenship of Defendants

9.      Hometown Corporation is, and was at the time the Complaint was filed, a Delaware corporation with its principal place of business in Chicago, Illinois.[6]  Pursuant to 28 U.S.C. § 1332(c)(1), Hometown Corporation is not now, and was not at the time of the filing of the Complaint,

---

[1] Oliver Decl., Ex. A.

[2] While filing this Notice of Removal, the Defendants expressly preserve and do not waive any defense based on lack of personal jurisdiction. *See, e.g.*, *Maplebrook Townhomes LLC v. Greenbank*, 2010 WL 4704472 (N.D. Cal. Nov. 12, 2010 ("[R]emoval to federal court . . . does not waive the right to object to personal jurisdiction.").  The Defendants also do not waive and specifically preserve any and all other defenses applicable to the named Plaintiffs or putative class members.

[3] *See* Oliver Decl., Ex. A.

[4] Compl., ¶ 37.

[5] Compl., ¶ 38.

[6] Stephen Braun Declaration ("Braun Decl.") at ¶ 2, Exhibit 2 to this Notice of Removal.

a citizen or resident of the State of California within the meaning of the Acts of Congress relating to the removal of cases. *See Davis v. HSBC Bank Nev., N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009) ("[A] corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'").

10.     Hometown LP is, and was at the time the Complaint was filed, a Delaware limited partnership with its principal place of business in Chicago, Illinois.[7]  No partner of Hometown LP is a California citizen, and no member, partner, corporation or other entity that has any ownership interest in Hometown LP is a citizen of California.[8] Pursuant to 28 U.S.C. § 1332(c)(1), Hometown LP is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the State of California within the meaning of the Acts of Congress relating to the removal of cases. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

11.     Hometown LLC is, and was at the time the Complaint was filed, a Delaware limited liability company with its principal place of business in Chicago, Illinois.[9]  No member of Hometown LLC is a California citizen, and no member, partner, corporation or other entity that has any ownership interest in Hometown LLC is a citizen of California.[10] Pursuant to 28 U.S.C. § 1332(c)(1), Hometown LLC is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the State of California within the meaning of the Acts of Congress relating to the removal of cases. *See Johnson*, 437 F.3d at 899.

12.     As alleged, Defendant Dani Crawford ("Crawford") is, and was at the time the Complaint was filed, domiciled in and a citizen of the State of California.[11]

---

[7] Braun Decl. at ¶ 3.

[8] Braun Decl. at ¶ 3.

[9] Braun Decl. at ¶ 4.

[10] Braun Decl. at ¶ 4.

[11] Compl., ¶ 39.

**III.    THIS COURT HAS JURISDICTION OVER THIS ACTION UNDER CAFA**

13.    Plaintiffs filed this putative class action on behalf of two classes.  First, Plaintiffs seek to represent "[a]ll persons residing in The Orchard Park community in Santa Rosa, California, who, as of October 8, 2017, owned or leased property that was destroyed or damaged in the fire" (the "Class").[12]  Plaintiffs also seek to represent "[a]ll persons age 65 or older residing in The Orchard Park community in Santa Rosa, California, who, as of October 8, 2017, owned or leased property that was destroyed or damaged in the fire" (the "Sub-Class").[13]

14.    The gravamen of Plaintiffs' Complaint is that following the October 2017 wildfires, Defendants "promised Plaintiffs that they would do the right thing and act quickly to get Plaintiffs back into their homes and back into The Orchard community"; however, Defendants have allegedly "delayed in allowing Plaintiffs to move back into the community, resulting in it being financially infeasible for them to do so."[14]

15.    Plaintiffs specifically allege that Defendants have failed to "expeditiously move forward with the clean-up, remediation, repair, and rebuilding process" of the Orchard community, and this has "harmed Plaintiffs and the members of the Class."[15]

16.    In the Complaint, Plaintiffs seek to recover:

(a) "Damages, including damages for the loss of use of their property, damages relating to the expenses they have incurred while being unable to live in their homes, and other damages associated with alternative living expenses and any displacement expenses";

(b) "Statutory damages under the MRL against" Defendants;

(c) "Restitution as against [Defendants] based on [their] violation of the UCL";

(d) "Injunctive relief, including an injunction against Hometown America enjoining them from unfairly, unlawfully, or fraudulently increasing rates in violation of the MRL or UCL

---

[12] Compl., ¶ 68.

[13] Compl., ¶ 69.

[14] Compl., ¶¶ 4-5.

[15] Compl., ¶ 34.

NOTICE OF REMOVAL

and otherwise trying to prevent Plaintiffs and the Class from being able to move back into their homes";

(e) "Attorney's fees, expert fees, consultant fees, and litigation costs and expense, as allowed under California law (and under the MRL and paragraph 26 of the Hometown America Contract)";

(f) "Punitive/exemplary damages";

(g) "All costs of suit";

(h) "Prejudgment interest, according to proof"; and

(i) "For such other and further relief as the Court shall deem proper, all according to proof."[16]

17.    CAFA reflects Congress's intent to have federal courts adjudicate substantial class action suits brought against out-of-state defendants. Toward that end, CAFA expands federal jurisdiction over class actions, and expressly provides that class actions filed in state court are removable to federal court where: (a) the putative class contains at least 100 class members; (b) any member of the putative class is a citizen of a state different from that of any defendant; and (c) the aggregate amount in controversy for the putative class exceeds $5,000,000, exclusive of interest and costs.[17] 28 U.S.C. § 1332(d); *accord Crummie v. CertifiedSafety, Inc.*, 2017 WL 4544747, at *1 (N.D. Cal. Oct. 11, 2017).

18.    This suit satisfies CAFA's requirements for federal jurisdiction. In addition, none of the exceptions to CAFA jurisdiction apply here. 28 U.S.C. § 1332(d).

**A.    The Putative Class Exceeds 100 Members.**

19.    CAFA requires that the putative class consist of at least 100 persons.  28 U.S.C. § 1332(d)(5)(B).  That requirement is readily met here.

---

[16] Compl., Prayer for Relief at 21.

[17] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiffs can state a claim or are entitled to any relief. The Defendants deny liability, deny Plaintiffs are entitled to any relief, and deny that a class can be properly certified in this matter. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.").

NOTICE OF REMOVAL

20.     Plaintiffs assert that "[b]ased on public information on the numbers of acres and structures damaged or destroyed, businesses interrupted, and persons displaced or otherwise affected, the Class of those with Fires-related damages includes tens of thousands of potential claimants."[18] This assertion in Plaintiffs' Complaint is sufficient to establish that the putative class exceeds 100 persons.  *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) ("[T]he first paragraph of the complaint states that [plaintiff] is seeking to 'provide remedies for hundreds of affected consumers.' We agree with the district court that this was enough[]" to satisfy CAFA's numerosity requirement.); *accord Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

21.     Additionally, the Class is defined as "[a]ll persons residing in The Orchard Park community in Santa Rosa, California, who, as of October 8, 2017, owned or leased property that was destroyed or damaged in the fire."[19]  There were 124 residents in the Orchard Park manufactured home community in Santa Rosa, California who, as of October 8, 2017, owned or leased property that was destroyed or damaged in the fire, as alleged in the Complaint.[20]  Plaintiffs allege that the October fire "decimated The Orchard park"[21] making each of the 124 residents a putative class member.

22.     Plaintiffs' allegations, theories, and definition of the putative class establish that the putative class readily exceeds 100 persons.  Thus, the requirement of 28 U.S.C. § 1332(d)(5)(B) is satisfied.

**B.     Minimal Diversity Exists.**

23.     The second CAFA requirement is minimal diversity – at least one putative class member and at least one defendant must be citizens of different states.  28 U.S.C. § 1332(d)(2).

24.     Here, at least one putative class member is a citizen of the State of California, namely, Plaintiff Cam Folks.[22]  Hometown Corporation is, and was at the time the Complaint was filed, a

---

[18] Compl., ¶ 72.

[19] Compl., ¶ 68.

[20] Braun Decl. at ¶ 5.

[21] Compl., ¶ 48.

[22] Compl., ¶ 37.

7

Delaware corporation with its principal place of business in Illinois,[23] and is thus a citizen of Delaware and Illinois for diversity purposes. Thus, the minimal diversity requirement is satisfied. 28 U.S.C. § 1332(d)(2).

**C.      The CAFA Amount in Controversy Requirement is Satisfied.**

25.      CAFA also requires that the aggregate amount in controversy exceed $5,000,000 for the entire putative class, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2); 1332(d)(6) ("[T]he claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interests and costs.").

26.      In a notice of removal, the removing party seeking to invoke CAFA jurisdiction "need include *only a plausible allegation* that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554 (emphasis added) (citing 28 U.S.C. 1446(a)). *See also Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (same); *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (same). This standard "tracks the general pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure." *Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, 2016 WL 4729302, at *3 (N.D. Cal. Sept. 12, 2016).

27.      Moreover, there is "no antiremoval presumption [for] cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Wilson v. TE Connectivity Networks, Inc.*, 2015 WL 13390023, at *1 (N.D. Cal. Mar. 26, 2015) (quotation marks omitted); *see also Crummie*, 2017 WL 4544747, at *1 (same); *Mackall v. Healthsource Glob. Staffing, Inc.*, 2016 WL 4579099, at *2-3 (N.D. Cal. Sept. 2, 2016) (same); *In re Anthem, Inc. Data Breach Litig.*, 2015 WL 7443779, at *2 (N.D. Cal. Nov. 24, 2015) (same). There is a "strong preference that interstate class actions should be heard in a federal court." *Wilson*, 2015 WL 13390023, at *1 (quotation marks and citation omitted).

28.      Toward that end, "[e]vidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Wilson*, 2015 WL 13390023, at *2 (citing *Dart Charokee*, 135 S. Ct. at 554); *Sharpe v. Puritan's Pride, Inc.*, 2017 WL

_____

[23] Braun Decl. at ¶ 2.

475662, at *2 (N.D. Cal. Feb. 6, 2017) (same).

29.    The ultimate inquiry is what amount is put in controversy by the plaintiff's complaint, not what the plaintiff will actually be awarded.  *Wilson*, 2015 WL 13390023, at *2 (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)).  To ascertain the amount in controversy, "[t]he court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Id.* (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).  As discussed below, Plaintiffs' allegations and prayer for relief have plausibly put into controversy an amount that exceeds the $5,000,000 threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).

30.    First, in their Fifth Cause of Action for Declaratory Relief, Plaintiffs seek a declaration from the Court that Defendants "cannot charge the homeowners for the clean-up of their home site unless the damage to the home or home site was the fault of the homeowner (which it was not)."[24] Plaintiffs contend that "Residents [of the Orchard Park] were also told that the clean-up would cost each of them $35,000."[25]   There were 124 residents of the Orchard Park manufactured home community in Santa Rosa, California who, as of October 8, 2017, owned or leased property that was destroyed or damaged in the fire, as alleged in the Complaint,[26] meaning that the relief sought under Plaintiffs' claim for declaratory relief puts $4,340,000 in controversy.[27] *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010 (N.D. Cal. 2002) (same).

---

[24] Compl., ¶ 102.

[25] Compl., ¶ 64.  *See also* Compl., ¶ 64 n.3 ("At a cost of $35,000, this would leave many residents without sufficient insurance funds to: (a) actually rebuild and replace their home; or (b) reimbursement or replacement of their belongings.").

[26] Braun Decl. at ¶ 5.

[27] ($35,000 * 124) = $4,340,000.  Even if this calculation is performed on a per-space basis, rather than a per-resident basis, the amount in controversy put at issue pursuant to this claim for relief is still $2,590,000 ($35,000 * 74).

NOTICE OF REMOVAL

31.     Second, and similarly, Plaintiffs seek a declaration from the Court that Defendants "cannot change the terms of the agreement or Park's rules or regulations that increase rates or create new fees payable by the homeowners which has not been expressly agreed upon by the homeowners and that Hometown America's efforts to do so are void and unenforceable pursuant to California Civil Code 798.25(e)."[28]   Defendants have allegedly "tried to force Plaintiffs . . . and the members of the Sub-Class to pay for things that [Defendants are] responsible for and to pay rent and put a significant deposit down on their replacement home as a condition and prerequisite to their being able to return to The Orchard and rebuilt their homes."[29]   With regard to those allegations, Plaintiffs contend that Defendants have offered replacement homes for $207,127.00 but are demanding a 50% deposit (or $103,563.50 per home).[30]   Plaintiffs allege that the Sub-Class "includes at least 80 different claimants."[31]   Accordingly, to the extent Plaintiffs seeks declaratory relief preventing Defendants from charging the Sub-Class certain rents and fees, such as a 50% deposit on replacement homes, Plaintiffs have put over $8,000,000 in controversy.[32] *See Hunt,* 432 U.S. at 347; *Brady*, 243 F. Supp. 2d at 1010.

32.     Third, Plaintiffs allege that Defendants wrongfully intend to require putative class members to pay space rent beginning in September 2018 even though certain replacement homes may not be available until 2019.[33]   Plaintiffs allege that space rent is $725 per month.[34] As alleged in the Complaint, approximately 30 replacement homes may not be available until after 2019.  Therefore, at a minimum, Plaintiff seek to prevent Defendants from charging $261,000 in space rent for 2019.[35]

33.     Fourth, Plaintiffs' Complaint contends that Defendants are liable for statutory damages

---

[28] Compl., ¶ 102.

[29] Compl., ¶ 61.

[30] Compl., ¶¶ 23, 26.

[31] Compl., ¶ 72.

[32] (80 * $103,563.50) = $8,285,080

[33] Compl., ¶¶ 27-29.

[34] Compl., ¶ 29.  Plaintiffs assert that their claims are typical of other putative class members. Compl., ¶ 76.

[35] ($725 * 12 * 30) = $261,000

NOTICE OF REMOVAL

"in the amount of $2,000 for each willful violation of the MRL . . . pursuant to [Cal.] Civ. Code Section 798.86(a)."[36]  As pleaded, Plaintiffs allege that Defendants have violated the MRL as to each member of the Class and, as a result, each member of the Class is entitled to statutory damages under the MRL.[37]  Plaintiffs also assert that the Class is composed of tens of thousands of claimants.[38]  Therefore, based on these allegations alone, Plaintiffs have placed at least $20,000,000 in controversy.[39]  *See Sharpe*, 2017 WL 475662, at *2.

34.    Even if the putative class is limited to 124 residents of the Orchard Park community, *see supra* at ¶ 21, Plaintiffs' request for statutory damages still places $248,000 in controversy.[40]

35.    Fifth, Plaintiffs claim compensatory damages "including damages for the loss of use of their property, damages relating to expenses they have incurred while being unable to live in their homes, and other damages associated with alternative living expenses and any displacement expenses."[41]  These compensatory damages must also be included in the amount in controversy determination.  *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1031-32 (N.D. Cal. 2002).

36.    Accordingly, without even considering the alleged punitive damages or attorneys' fees, the CAFA amount in controversy is satisfied.

37.    However, Plaintiffs seek punitive damages under the MRL,[42] Cal. Civ. Code. § 3294,[43] and in their Prayer for Relief.[44]  Defendants do not concede punitive damages would ever be appropriate under the circumstances of this case; nonetheless, where punitive damages are available under applicable law, they are considered in determining the amount in controversy. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001), *holding modified on other grounds by Exxon*

---

[36] Compl., ¶ 66.

[37] Compl., ¶¶ 81-83.

[38] Compl., ¶ 72.

[39] (10,000 * $2,000) = $20,000,000

[40] (124 * $2,000) = $248,000

[41] Compl., Prayer for Relief at 21.

[42] Compl., ¶ 83.

[43] Compl., ¶ 66.

[44] Compl., Prayer for Relief at 21.

NOTICE OF REMOVAL

1    *Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005)  ("It is well established that punitive

2    damages are part of the amount in controversy in a civil action.").

3           38.     "To establish probable punitive damages, defendant may introduce evidence of jury

4    verdicts in cases involving analogous facts." *Simmons*, 209 F. Supp. 2d at 1033.  In *Rich v. Schwab*,

5    63 Cal. App. 4th 803, 75 Cal. Rptr. 2d 170 (1998), *as modified* (June 1, 1998), a jury awarded

6    mobilehome park tenants $1.7 million in compensatory damages and $653,000 in punitive damages

7    where tenants brought a class action against the park owners arising from a rent increase that was

8    made in retaliation for the tenants' efforts to obtain relief from an earlier rent increase.  More

9    recently, in *Aranda v. Terrace View Partners, LP*, Case No. 37-2013-00057526-CU-PO-CTL (San

10   Diego County Superior Court July 6, 2016), a jury awarded mobile home park tenants $57 million in

11   punitive damages based on defendant park owners charging unreasonable rents and other illegal

12   practices causing residents to lose their homes.  The claims in *Aranda* included a cause of action

13   under California's Elder Abuse statute.[45]  Here, Plaintiffs have placed more than $5 million in

14   controversy by demanding punitive damages.

15          39.     Moreover, attorneys' fees are properly included in the amount in controversy if an

16   underlying statute or contract authorizes an award of attorneys' fees.  *Guglielmino v. McKee Foods*

17   *Corp.*, 506 F.3d 696, 700 (9th Cir. 2007); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir.

18   1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory

19   or discretionary language, such fees may be included in the amount in controversy.").  Here, Plaintiff

20   specifically demands attorneys' fees,[46] and attorneys' fees are allowed under the MRL.  *See* Cal. Civ.

21   Code § 798.85.  Although Defendants dispute Plaintiffs' entitlement to recover attorneys' fees, a fair

22   estimate of potential attorneys' fees would be 25% of damages.  *See, e.g.*, *Staton v. Boeing Co.*, 327

23   F.3d 938, 967 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark

24   award for attorney fees.") (internal quotation marks omitted); *Jasso v. Money Mart Exp., Inc.*, 2012

---

[45]    https://www.prnewswire.com/news-releases/jury-awards-58389000-to-10-households-of-the-terrace-view-mobile-home-park-in-san-diego-300295082.html    (last    accessed    June    20,    2018);
https://mhphoa.com/news/2016/09 (last accessed June 20, 2018).

[46] Compl., ¶ 83; Compl., Prayer for Relief at 21.

NOTICE OF REMOVAL

1   WL 699465, at *7 (N.D. Cal. Mar. 1, 2012).[47]

2   40.    For all the foregoing reasons, the $5,000,000 CAFA amount in controversy

3   requirement is satisfied here. 28 U.S.C. §§ 1332(d)(2); 1332(d)(6).

4   **D.    The Exceptions to CAFA Jurisdiction Do Not Apply.**

5   41.    CAFA provides two mandatory exceptions and one discretionary exception to the

6   application of federal jurisdiction. *See* 28 U.S.C. §§ 1332(d)(3)-(4). In this case, it is clear that no

7   exception applies. Each CAFA exception requires, as a starting point, that the "primary defendants"

8   are citizens of the forum state or that "significant relief" is sought from a citizen of the forum state.

9   *See* 28 U.S.C. § 1332(d)(3)-(4) (local controversy CAFA exception requires that "significant relief"

10  be sought from an in-state defendant; home state and discretionary CAFA exceptions require that all

11  "primary defendants" be resident defendants). When determining citizenship under CAFA, "an

12  unincorporated association shall be deemed to be a citizen of the State where it has its principal place

13  of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Therefore,

14  Hometown Corporation, Hometown LP, and Hometown LLC are not citizens of California for

15  purposes of CAFA. *See supra* at ¶¶ 9-11; *Roling v. E*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1185

16  (N.D. Cal. 2010) (stating that limited liability companies and limited partnerships are "unincorporated

17  associations" for purposes of CAFA).

18  42.    Nonresident defendants Hometown Corporation, Hometown LP, and Hometown LLC

19  are the primary defendants against whom Plaintiffs seek significant relief. The only other defendant,

20  Crawford, is a sham defendant, and there is no possible right to relief against Crawford. *See infra* at

21  ¶¶ 46-51. Indeed, the Complaint contains no factual allegations of any conduct or action specifically

22  taken by Crawford.[48]   Based on Plaintiffs' allegations in the Complaint, Crawford does not have

---

[47] *See also DJ ST. Jon on behalf of herself & all others similarly situated v. Tatro*, 2016 WL 1162678, at *2-3 (S.D. Cal. Mar. 23, 2016), *aff'd sub nom. Jon v. Tatro*, 698 F. App'x 917 (9th Cir. 2017) ("On April 20, 2007, the state court found that the City violated its mandatory duty under the state Mobilehome Residency Law ('MRL') and Government Code section 65863.7(e) prior to closing the Park . . . by failing to prepare a tenant impact report and serve lawful notices that complied with the MRL's timing and content requirements . . . . The total compensation and other amounts owed under the terms of the Amended Judgment is estimated to be $23,149,529, with a corresponding 33 1/3% attorney fee award in the amount of $7,716,510.") (internal quotation marks omitted).

[48] *See generally* Compl. ¶¶ 6-34, 46-66.

13

"substantial exposure to a significant portion of the proposed class in the action." *Kendrick v. Xerox State & Local Sols., Inc.*, 2018 WL 1605104, at *4 (N.D. Cal. Apr. 3, 2018) (quotation marks omitted). Nor is Crawford "the real 'target' of the lawsuit"—that is, Crawford is not "expected to incur most of the loss if liability is found." *Harrington v. Mattel, Inc.*, 2007 WL 4556920, at *5 (N.D. Cal. Dec. 20, 2007) (quotation marks omitted).

43. Accordingly, because the CAFA prerequisites are met and none of the exceptions apply, this civil action is properly removable under CAFA.

## IV.   THIS COURT HAS JURISDICTION OVER THIS ACTION UNDER 28 U.S.C. §§ 1332 AND 1367

44. This Court also has original federal court jurisdiction over this Action under 28 U.S.C. § 1332. Defendants may remove to this Court pursuant to the provisions of 28 U.S.C. § 1441(b) because there was at the time of filing of this Action, and there is now, complete diversity of citizenship between the named Plaintiffs and Defendants, and the amount in controversy of Plaintiff Miller's claims exceeds the sum or value of $75,000, exclusive of interest and costs. Defendant Crawford was fraudulently joined to this action, and her citizenship should not be considered for purposes of complete diversity.

45. Plaintiff Miller is, and was at the time of the filing of this Action, a resident and citizen of the State of California. *See supra* at ¶ 8. Plaintiff Folks is, and was at the time of the filing of this Action, a resident and citizen of the State of California. *See supra* at ¶ 7. Hometown Corporation, Hometown LP and Hometown LLC are not now, and were not at the time of the filing of the Complaint, citizens or residents of California. *See supra* at ¶¶ 9-11.

46. Plaintiffs' joinder of Crawford, an alleged citizen of California, does not preclude diversity jurisdiction because Crawford has been fraudulently joined in this action.[49] A fraudulently joined defendant's citizenship "[i]s not relevant for purposes of diversity jurisdiction." *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002).

---

[49] Because Crawford is fraudulently joined by Plaintiffs, her consent is not required for removal. *See* 28 U.S.C. § 1446(b)(2)(A).

NOTICE OF REMOVAL

47.     A defendant is fraudulently joined "[i]f a plaintiff fails to state a cause of action against [that] defendant."  *United Computer*, 298 F.3d at 761; *see also McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) ("If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent.").  Plaintiffs fraudulently joined Crawford as a defendant because Plaintiffs have failed to state a claim against her.  There is no possibility of recovery against Crawford under Plaintiffs' five claims, *see supra* at ¶ 3.

48.     As an initial matter, all of Plaintiffs' claims against Crawford fail as a matter of law based on California's managerial privilege.  Under clearly settled California law, conduct is privileged if it is performed by an individual in his or her managerial capacity and motivated, in part, to benefit that individual's principal.  *McCabe*, 811 F.2d at 1339.  In this case, Plaintiffs allege that Crawford is a Regional Manager for Defendants, and there is no allegation that Crawford ever acted outside the course and scope of her employment.[50]  In fact, each time Crawford's name is mentioned in the Complaint it is simply a non-substantive reference to her status as an agent or representative of Defendants.[51]  Any of Crawford's alleged conduct that could possibly serve as the basis of a claim brought by Plaintiffs was privileged.  *See Gasnik v. State Farm Ins. Co.*, 825 F. Supp. 245, 249 (E.D. Cal. 1992).  Plaintiffs cannot state a claim against Crawford based on privileged conduct.

49.     Plaintiffs cannot state a claim for breach of contract against Crawford for the separate and independent reason that Crawford is not a party to the contracts at issue.  Under California law, "[o]nly a signatory to a contract may be liable for any breach."  *United Computer*, 298 F.3d at 761 (quoting *Clemens v. Am. Warranty Corp.*, 193 Cal. App. 3d 444, 452 (Cal. Ct. App. 1987)).  In *United Computer*, the Court determined that an individual defendant was fraudulently joined because the individual was not a party to the contract upon which the plaintiff could base its claim.  *Id.* Plaintiffs do not allege that Crawford is a party to any of the agreements cited by Plaintiffs; accordingly, Plaintiffs cannot state a claim against Crawford for breach of contract.

---

[50] *See* Compl., ¶ 9, n.1.

[51] *See* Compl., ¶¶ 9, 14, 39, 87.

1

50.     Plaintiffs also cannot state a claim against Crawford under the MRL because Plaintiffs

2 fail to articulate any conduct by Crawford in violation of the MRL.  Plaintiffs specifically claim that

3 Defendants changed the terms of Plaintiffs' lease agreements and attempted to charge additional fees

4 without Plaintiffs' consent in violation of the MRL.[52]  None of these allegations refer or relate to

5 Crawford individually.  Moreover, Plaintiffs have no right to declaratory relief against Crawford

6 because the grounds listed by Plaintiffs for declaratory relief relate to alleged violations of the

7 MRL.[53]  Plaintiffs' MRL claim against Crawford is not a proper subject of declaratory relief.

8

51.     Similarly, Plaintiffs' Elder Abuse and UCL claims against Crawford fail because these

9 claims are not alleged with particularity.  *See Quintero Family Trust v. OneWest Bank, F.S.B.*, 2010

10 WL 392312, at * 16 (S.D. Cal. Jan. 27, 2010) (plaintiffs failed to state a claim for elder abuse where

11 the plaintiffs failed to "[s]tate with any specificity which particular Defendant did what, when it was

12 done, and how it was fraudulent"); *Champion Courage Ltd. v. Fighter's Market, Inc.*, 2018 WL

13 1920201, at *7 (S.D. Cal. Apr. 24, 2018) (quoting *Baba v. Hewlett-Packard Co.*, 2010 WL 2486353,

14 at *6 (N.D. Cal. June 16, 2010) (California courts have held "[t]hat a UCL claim of any kind 'must

15 identify the particular section of the statute [the UCL] that was violated, and must describe with

16 reasonable particularity the facts supporting the violation.'"")).  With regard to Plaintiffs' Elder Abuse

17 claim, Plaintiffs have wholly failed to allege with any particularity what Crawford did, when she did

18 it, and how her conduct was wrongful.  The only mention of Crawford's conduct is a bare recitation

19 of the elements for a financial abuse claim with zero factual support.[54]  And, for the UCL claim

20 against Crawford, not only do Plaintiffs fail to identify the particular section of the UCL that they

21 claim Crawford violated, Plaintiffs fail to allege *any facts* against Crawford supporting the alleged

22 violation.  Plaintiffs' Elder Abuse and UCL claims fail outright, and Plaintiffs' intent to fraudulently

23 join Crawford for the sole purpose of attempting to destroy diversity is demonstrated by the complete

24 dearth of any substantive allegations asserted against Crawford.

25

---

26 [52] *See* Compl., ¶¶ 54, 57, 81

27 [53] *See* Compl., ¶ 102.

28 [54] *See* Compl., ¶ 87.

NOTICE OF REMOVAL

52.    Plaintiffs' use of fictional defendants[55] also does not destroy diversity and does not divest this Court of diversity jurisdiction. *See Gardiner Family, LLC v. Crimson Res. Mgmt. Corp.*, 147 F. Supp. 3d 1029, 1036 (E.D. Cal. 2015) ("The Court concludes that where, as here, the charges against the Does are so general that no clues exist as to their identity, citizenship, or relationship to the action, the Court may disregard these fictitious defendants for jurisdictional purposes."). Thus, there is complete diversity between the parties.

53.    The amount in controversy of Plaintiff Miller's claims exceeds the jurisdictional minimum of $75,000, exclusive of interest and costs.

54.    Plaintiff Miller seeks a declaration from the Court that Defendants "cannot charge the homeowners for the clean-up of their home site unless the damage to the home or home site was the fault of the homeowner (which it was not)."[56] Plaintiff Miller contends that "Residents [of the Orchard Park] were also told that the clean-up would cost each of them $35,000."[57] Plaintiff Miller also seeks a declaration preventing Defendants from charging her certain rents and fees, such as a 50% deposit on a replacement home which would amount to $103,563.50 as alleged.[58] Plaintiff Miller has put the value of this declaratory relief in controversy. *See Hunt*, 432 U.S. at 347; *Brady*, 243 F. Supp. 2d at 1010. Plaintiff Miller also seeks statutory damages pursuant to Cal. Civ. Code § 798.86(a)[59] and compensatory damages for loss of use of her property, expenses she has incurred while being unable to live in her home, and other damages associated with alternative living expenses and displacement expenses.[60] Plaintiff Miller also demands punitive damages[61] and attorneys' fees[62]

---

[55] Compl., ¶¶ 42-43.

[56] Compl., ¶ 102.

[57] Compl., ¶ 64. *See also* Compl., ¶ 64 n.3 ("At a cost of $35,000, this would leave many residents without sufficient insurance funds to: (a) actually rebuild and replace their home; or (b) reimbursement or replacement of their belongings.").

[58] Compl., ¶¶ 23, 26, 61, 102.

[59] Compl., ¶ 66.

[60] Compl., Prayer for Relief at 21.

[61] Compl., ¶¶ 66, 83; Compl., Prayer for Relief at 21.

[62] Compl., ¶ 83; Compl., Prayer for Relief at 21.

NOTICE OF REMOVAL

which must be considered in the amount in controversy determination. *See Gibson*, 261 F.3d at 945 (punitive damages); *Galt G/S*, 142 F.3d at 1156 (attorneys' fees). Therefore, according to Plaintiff Miller's own allegations, the amount in controversy for Plaintiff Miller's individual claims plainly exceeds $75,000.

55.     Based on complete diversity of citizenship between the named Plaintiffs and Defendants and an amount in controversy that exceeds $75,000 for Plaintiff Miller's claims, in addition to CAFA, this action is also removable under 28 U.S.C. §§ 1332 and 1441.

56.     Plaintiff Miller seeks to represent the Class and the Sub-Class,[63] and this Court can exercise supplemental jurisdiction over the class claims without additional inquiry into the amount in controversy for each putative class member's claim. 28 U.S.C. § 1367; *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 566 (2005). The United States Supreme Court has established that, in the putative class action context, the amount in controversy requirement is satisfied where at least one plaintiff individually meets the $75,000 threshold. *See Allapattah*, 545 U.S. at 549 (holding that where "at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other [p]laintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount").[64] Because the amount in controversy is satisfied for Plaintiff Miller's individual claims, this Court can exercise supplemental jurisdiction over the class claims under § 1367.

## V.     TIMELINESS OF REMOVAL

57.     Hometown Corporation was first served with the Summons and Complaint on May 24, 2018, *see supra* at ¶ 4, and this Notice of Removal is timely filed with this Court within thirty (30) days of that date.

58.     The Defendants have sought no similar relief with respect to this matter.

---

[63] Compl., ¶¶ 68, 69.

[64] *See also Pack v. Nat'l Carriers, Inc.*, 2016 WL 4515920, at *2 n.4 (C.D. Cal. Aug. 29, 2016) (citing *Allapattah* for proposition that "[i]n non-CAFA class actions, diversity jurisdiction is established where at least one class member is diverse from the defendant and no named plaintiff is non-diverse . . . and at least one of the named plaintiffs meets the amount in controversy requirement."); *Calderon v. BKB Constr., LP*, 2017 WL 2618094, at *2 (N.D. Cal. June 16, 2017) (same).

NOTICE OF REMOVAL

## VI.    ALL OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED

59.    Venue is proper in this district under 28 U.S.C. § 1446(a) because this district and division embrace the place in which the removed action has been pending.

60.    So far as the Defendants are aware, no further proceedings occurred in this Action prior to Defendants filing of this Notice of Removal.

61.    A Notice of Filing of Notice of Removal, with a copy of the Notice of Removal attached, will be filed promptly in the Superior Court of the State of California, County of Sonoma, in accordance with the provisions of 28 U.S.C. § 1446(d).

62.    Written notice of the filings of this Notice of Removal will be given to the adverse parties as required by law.

63.    For all the foregoing reasons, this Court has original jurisdiction under 28 U.S.C. § 1332, 28 U.S.C. § 1367, 28 U.S.C. § 1441 (a) and (b), and 28 U.S.C. § 1453.

64.    In the event that any questions should arise with regard to the propriety of the removal of this Action, the Defendants respectfully request the opportunity to present a brief and oral argument in support of their positions expressed herein.

**WHEREFORE**, the Defendants hereby give notice that all further proceedings in this matter shall take place in the United States District Court for the Northern District of California, unless and until held otherwise by that Court.

Dated:  June 21, 2018                    MAYNARD COOPER & GALE LLP

Respectfully submitted,

/s/ *Linda B. Oliver*
Linda B. Oliver
*Attorneys for Defendants Hometown America*
*Management, Corp., Hometown America Management,*
*LLC, and Hometown America Management, LP*

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA                    )

3

COUNTY OF SAN FRANCISCO                )

4

    I am employed in the County of San Francisco, State of California.  I am over the age of 21

5

and not a party to the within action.  My business address is Maynard, Cooper & Gale, LLP, 600

6

Montgomery Street, Suite 2600, San Francisco, CA 94111.  On the date indicated below, I served the foregoing document described as:

7

**NOTICE OF REMOVAL**

8

9

on the interested parties in this action by placing: [ ] the original document - OR- [X] a true and correct copy thereof enclosed in sealed envelopes addressed as follows:

10

Mark P. Robinson, Jr.

11

ROBINSON CALCAGNIE, INC.
19 Corporate Plaza Drive

12

Newport Beach, CA 92660
Telephone: (949) 720-1288

13

Facsimile: (949) 720-1292
Email: mrobinson@robinson firm.com

14

15

Mary Alexander
MARY ALEXANDER & ASSOCIATES, P.C.

16

44 Montgomery Street, Suite 1303
San Francisco, CA 94104

17

Telephone: (415) 433-4440
Facsimile: (415) 433-5440

18

Email: malexander@maryalexanderlaw.com

19

Attorneys for Plaintiffs and the Proposed Class

20

21

[X]    BY MAIL: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service

22

on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business.  I am aware that on motion of the party served, service is

23

presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

24

25

    I declare that I am employed in the office of a member who has been admitted to the bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of

26

the State of California that the foregoing is true and correct.

27

Executed June 21, 2018 in San Francisco, California.

_____

Rachel Ouk